UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CURTIS BUCHHEIT, MD,

       Plaintiff,

v.

LAKELAND HEALTH SYSTEMS,
et al.,

       Defendants.
                             /

Case No.  1:15-CV-1315

HON. GORDON J. QUIST

## **OPINION**

Plaintiff, Curtis Buchheit, alleges that Defendants violated his due process rights and violated the Sherman Antitrust Act, 15 U.S.C. § 1.  Plaintiff also asserts a number of state law claims.  Both sides have moved for summary judgment.  For the reasons discussed below, the Court will grant Defendants' motion for summary judgment on Plaintiff's federal claims and decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

### *Background*

Plaintiff, a physician, entered into an employment agreement with Inpatient Consultants of Michigan (IPC) in 2014.  (ECF No. 88-3.)  Around the same time, IPC contracted with Defendant Lakeland Health (LH) for certain medical professionals to work at Lakeland Hospital, Watervliet (Watervliet Hospital), a subsidiary of LH.  (ECF No. 88-4.)  Plaintiff worked at Watervliet Hospital pursuant to that agreement.

On February 24, 2015, LH sent Plaintiff a letter notifying him that a quality review of his cases had raised concerns, and that LH had determined that a "precautionary suspension of all [Plaintiff's] privileges at [Watervliet Hospital]" was necessary and would be effective immediately.

(ECF No. 88-11.) The letter further stated that Watervliet Hospital's Medical Executive Committee (MEC) would meet to determine next steps, and that Plaintiff was encouraged to attend that meeting. (*Id.*)

Plaintiff attended the MEC meeting on March 2, 2015, and was encouraged to present each case that had raised concerns. (ECF No. 88-13.) After Plaintiff was excused, the MEC decided to extend the precautionary suspension until March 17, 2015 to allow the committee members additional time to review the matter. (*Id.* at Page ID. 1295.) The MEC reconvened on March 17, 2015 and reviewed one of the cases with Plaintiff. (ECF No. 88-15.) After Plaintiff was excused, the MEC members decided to extend the precautionary suspension and refer Plaintiff for permanent suspension. (*Id.* at Page ID. 1301.) That same day, LH sent Plaintiff a letter notifying him of the MEC's decision. (ECF No. 88-16.) The letter also informed Plaintiff that he had the right to request a hearing. (*Id.*)

On June 23, 2015, LH sent Plaintiff a letter notifying him that it had scheduled a Medical Staff Hearing. (ECF No. 88-19.) The letter listed the cases that would be addressed at the hearing, a number of "specific care concerns" and other general areas of concern, and the witnesses to be called. (*Id.*) Following the hearing, which took place on August 11 and October 6, 2015, the Medical Staff Hearing Committee voted to uphold the recommendation to permanently suspend Plaintiff's medical staff privileges. (ECF No. 88-20.) Watervliet Hospital's Board of Trustees subsequently upheld the decision to terminate Plaintiff's privileges. (ECF No. 88-21 at Page ID.1316; ECF No. 88-22.)

*Legal Standard*

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty*

2

*Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.* The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

## *Discussion*

**1.     Due Process**

States may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To comply with this requirement, a government entity must "provide a fair procedure when depriving someone of life, liberty, or property." *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012) (internal quotation marks omitted). "To make out a claim for a violation of procedural due process, the plaintiff has the burden of showing that '(1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest.'" *Id.* (quoting *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006)).

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191 (1965)). "Procedural due process generally requires that the state provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest." *Warren v. City of Athens*, 411 F.3d 697, 708 (6th Cir. 2005). The Sixth Circuit has held that, in addressing disciplinary actions against a physician by a hospital, courts are "generally limited to determining whether the

procedures used violated any federal rights and whether the administrative body was presented with substantial evidence to support its ultimate action." *Yashon v. Hunt*, 825 F.2d 1016, 1022 (6th Cir. 1987).

Because Defendants have not argued that Plaintiff failed to satisfy the first two elements of his due process claim, the Court will focus on the third element. Plaintiff's primary argument is that LH failed to follow its own bylaws during the proceedings involving Plaintiff. In particular, Plaintiff points to bylaws requiring that the LH Board of Directors take action following MEC meetings within a certain time period. However, the Sixth Circuit has made clear that "compliance with organizational bylaws is not a mandatory requirement of due process." *Stratienko v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 402 F. App'x 990, 995 (6th Cir. 2010). Accordingly, Plaintiff's argument that Defendants violated due process by failing to follow the bylaws fails.

Plaintiff further argues that the MEC meetings violated due process because Plaintiff was not allowed to have an attorney present, one of the MEC members participated telephonically, and another MEC member was not present during a portion of the meeting. These facts are insufficient to demonstrate a violation of due process. Plaintiff does not dispute that he had the assistance of an attorney during the subsequent Medical Staff Hearing. Moreover, even if the process that occurred during the MEC was not perfect, Plaintiff was afforded an opportunity to contest the recommendation of the MEC at the Medical Staff Hearing. *See Mitchell v. Fankhauser*, 375 F.3d 477, 480 (6th Cir. 2004) (noting that pre-termination hearings need not be elaborate so long as an employee is provided with a full post-termination hearing).

Plaintiff further argues that the decision makers involved in the hearings were biased and did not fully review the evidence. These allegations are not substantiated by evidence, and fail to meet Plaintiff's burden to demonstrate that he lacked a meaningful opportunity to be heard. Similarly,

Plaintiff fails to provide evidence regarding the standard of review employed during the Medical Staff Hearing, or to adequately explain how that deprived him of due process.

Plaintiff was notified of his initial precautionary suspension and encouraged to attend and present at the MEC hearing to address the issues underlying that suspension. Following the MEC's decision to refer Plaintiff for permanent suspension, Plaintiff was informed that he had the right to a hearing. Once that hearing was scheduled, Plaintiff was provided with a detailed list of the issues to be addressed at that hearing, as well as the witnesses that would be presented. The Medical Staffing Hearing Committee conducted a two-day hearing, at which Plaintiff was represented by counsel, and ultimately reached a decision to terminate Plaintiffs' privileges. That determination was subsequently upheld by the Board of Trustees. Under the circumstances, Plaintiff had a meaningful opportunity to be heard at various points in the process. Accordingly, the Court concludes that Plaintiff's due process claim fails.[1]

## 2. Antitrust Claim

The Sherman Act states, "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. "The essential elements of a violation of Section 1 of the Sherman Act are: 1) a contract, combination or conspiracy; 2) affecting interstate commerce; 3) which imposes an 'unreasonable' restraint on trade." *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 676 (E.D. Mich. 2000) (quoting *White and White, Inc. v. American Hosp. Supply Co.*, 723 F.2d 495, 504 (6th Cir.1983)).

---

[1] Defendants argue that they are entitled to immunity under the Health Care Quality Improvement Act, 42 U.S.C. § 11101, *et seq.*, which grants limited immunity "from liability for damages." *Id.* § 11111(a). In this case, however, Plaintiff seeks injunctive relief as well as monetary damages. *See Bryan v. James E. Holmes Reg'l Med. Ctr.*, 33 F.3d 1318, 1322 (11th Cir. 1994) (noting that Congress granted immunity from monetary damages while "preserving causes of action for injunctive or declaratory relief for aggrieved physicians").Thus, the Court addresses Defendants' argument on the merits of Plaintiff's claim, and need not address immunity.

Plaintiff's antitrust claim is difficult to decipher. The claim appears to piggyback on Plaintiff's due process claim—Plaintiff asserts that he was not given a meaningful opportunity to be heard and that decision makers were biased. Plaintiff further alleges that LH reported inaccurate information to federal and state databases.

Plaintiff fails to satisfy the elements of an antitrust claim. There is no allegation, let alone any evidence, that there was any sort of agreement that affected interstate commerce. Furthermore, there is no evidence that Defendants engaged in any conduct that imposed an unreasonable restraint on trade. Accordingly, the Court will grant Defendants' motion for summary judgment on this claim.

**3.     State Law Claims**

A district court may decline to exercise supplemental jurisdiction over a state-law claim if the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). In exercising its jurisdiction, a court may consider "the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173, 118 S. Ct. 523, 534 (1997). "[W]hen deciding whether to exercise supplemental jurisdiction, a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *Id.* (internal citations omitted).

The question of whether a district court should assert supplemental jurisdiction "'remains open throughout the litigation.'" *Nails v. Riggs*, 195 F. App'x 303, 313 (6th Cir. 2006) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 727, 86 S.Ct. 1130, 1139 (1966)). "Where a district court exercises jurisdiction over state law claims solely by virtue of [supplemental] jurisdiction and the federal claims are dismissed prior to trial, the state law claims should ordinarily be dismissed without reaching their merits." *Wolotsky v. Huhn*, 960 F.2d 1331, 1338 (6th Cir.

1992). Thus, courts routinely decline to exercise supplemental jurisdiction after dismissing federal claims at the summary judgment stage. *See e.g., Booker v. City of Beachwood*, 451 F. App'x 521, 523 (6th Cir. 2011); *Weeks v. Portage Cnty. Exec. Offices*, 235 F.3d 275, 280 (6th Cir. 2000).

Plaintiff's state-law claims—which include breach of contract, fraud, defamation, and tortious interference—are distinct from Plaintiff's federal claims, and would require a thorough analysis of state law. Fairness and comity favor allowing a state court to determine those claims. Accordingly, this Court declines to exercise supplemental jurisdiction over the state-law claims.

**4.     Motions to Admit Evidence**

Plaintiff has moved to admit certain documents into evidence. These motions are unnecessary at this point in the case. The Court has considered the exhibits attached to both parties' motions, and it is unnecessary to admit any evidence. Accordingly, the Court will deny these motions.

*Conclusion*

Plaintiff has failed to demonstrate that he was denied adequate procedural rights prior to termination of his privileges, and thus his due process claim fails. Furthermore, Plaintiff has failed to allege, let alone present evidence, that Defendants' actions affected interstate commerce or imposed an unreasonable restraint on trade. Accordingly, the Court will dismiss Plaintiff's federal claims and decline to exercise supplemental jurisdiction over the state-law claims.

An order consistent with this Opinion shall issue.

Dated: July 21, 2016                                             /s/ Gordon J. Quist
                                                                         GORDON J. QUIST
                                                                   UNITED STATES DISTRICT JUDGE